IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONTE PACE ROBINSON,** | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 21-CV-4398-JMY** |
| | : | |
| **RESPONDING NURSE,** *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**YOUNGE, J.**                                                                                  **JANUARY 7, 2022**

        Plaintiff Donte Pace Robinson, a convicted prisoner currently incarcerated at SCI-Forest, has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 2.) Robinson has also filed a Motion for Leave to Proceed *in Forma Pauperis* together with an inmate account statement. (ECF Nos. 1, 3.) For the following reasons, the Court will grant Robinson leave to proceed *in forma pauperis*, permit him to proceed on his excessive force claims against Correctional Officers 1, 2, 3 and 4, his failure to protect claim against Lieutenant, and his retaliation claim against Lieutenant 2. Robinson's deliberate indifference claim against Responding Nurse will be dismissed with prejudice. The remainder of his claims will be dismissed without prejudice and Robinson will be granted the option of filing an amended complaint to attempt to cure the defects discussed below or proceeding only on the claims that pass statutory screening.

**I.**       **FACTUAL ALLEGATIONS**[1]

---

[1] The allegations set forth in this Memorandum are taken from Robinson's Complaint. The Court adopts the pagination assigned to the Complaint by the EC/ECF docketing system.

Robinson's claims arise primarily from events that allegedly occurred while he was incarcerated at SCI-Phoenix. (ECF No. 2 at 3.) Robinson names the following Defendants, all of whom are alleged to be employed by SCI-Phoenix: Responding Nurse, Correctional Officers 1, 2, 3, and 4 (collectively "the COs"), Lieutenant, Lieutenant 1, and Lieutenant 2. (*Id.* at 3.) Robinson also asserts a claim against John E. Wetzel based on the conditions of confinement associated with COVID-19 prevention measures that Robinson experienced while incarcerated at SCI-Forest. (*Id.* at 16-17.)

Robinson alleges that on November 28, 2019, he felt unwell when he arrived at the SCI-Phoenix medical office for his insulin. He received his insulin and left the office, whereupon he lost consciousness in the hallway, allegedly experiencing a seizure. (*Id*. at 6.) Robinson alleges that he was handcuffed by the COs,[2] with the aid of Lieutenant, and held on his back. (*Id.* at 11.) He alleges that the COs laid on his legs, chest, and arms, causing him pain and putting him at high risk of death. (*Id.*) Robinson claims that Defendant Responding Nurse treated him with Narcan, Benadryl, Ativan, and a tranquilizer, which placed Robinson in a deeper state of unconsciousness and increased his risk of harm. (*Id.* at 12.) He alleges that, while tranquilized, he was moved to a medical holding room, where the Defendant COs continued to restrain him by handcuffing him and laying on him on the ground at the direction of Lieutenant. (*Id.*) When he regained consciousness, he found himself handcuffed face down with the Defendant COs on top of him to keep him still. (*Id.* at 13.) He claims he felt near death and pleaded with the Defendant COs, stating, "Please help me" and "I can't breathe." (*Id.*) The Defendant COs allegedly mocked Robinson and remarked "he must be on some type of drugs, you know it gives them

---

[2] Although it is not entirely clear, the Court assumes that these are the four Defendant Correctional Officers.

strength." (*Id.*) Robinson was transported to a hospital where he was diagnosed as having experienced a seizure and was allegedly treated for injuries to his wrist, back, chest, and legs. (*Id.* at 14.)

Robinson alleges that, after he filed a grievance related to the November 28 events, he was called to a security room by Defendant Lieutenant 1, a female, who showed Robinson video of him losing consciousness and falling to the floor, but did not show him video of the COs' response. She allegedly explained that the objective of responding staff was to protect Robinson from himself. (*Id.*) She asked Robinson what type of drugs he took and he responded that he took only prescribed medication. (*Id.*) Lieutenant 1 then asked Robinson to "sign off" on his grievance. Robinson refused and was allegedly ordered to step into a smaller room with Lieutenant 2. (*Id.*)

Lieutenant 2 allegedly told Robinson that he knew Robinson used some kind of drug and could make Robinson's stay at SCI-Phoenix "troublesome." (*Id.* at 15.) He allegedly threatened that he would report that Robinson was abusing drugs, arrange for Robinson's cell to be searched, and have Robinson placed in restricted housing if he did not sign off on the grievance. (*Id.*) Finally, Lieutenant 2 advised Robinson that the described actions would damage Robinson's chance to be paroled. (*Id.*) Robinson alleges that when he arrived at SCI-Camp Hill several days later, he was advised that he had been listed as a drug abuser. (*Id.*) Robinson alleges that as a result of this label, he was required to participate in additional programs as a requirement of his parole, and his medication is crushed when provided to him. (*Id.*) He alleges that this was a result of Lieutenant 2's retaliation for Robinson's filing of and refusal to sign off on his grievance. (*Id.*)

Based on the foregoing, Robinson asserts a deliberate indifference claim against Responding Nurse, an excessive force claim against the COs, a failure to protect claim against

Lieutenant, and a retaliation claim against Lieutenant 1 and Lieutenant 2. (*Id.* at 18-19.) As relief, Robinson requests that this Court issue a declaratory judgment finding that the conduct of the Defendants was in violation of the United States Constitution (*id.* at 20), issue an injunction "ordering defendants to provide a medical exam to see brain scan, CAT scan, MRI, etc., also expunge false reports," (*id.* at 21), release him from custody (*id.*), and award him compensatory and punitive damages. (*Id.*)

Robinson also alleges that, in early 2020, after being transferred to SCI-Forest, he was forced to wear a mask when exiting his cell and was forced to remain in his cell for excessive amounts of time as part of the prison's response to COVID-19. (*Id.* at 16.) Robinson alleges this caused him to suffer anxiety and depression. (*Id.*) He further alleges that the prison is overcrowded and social distancing is not possible, thereby increasing his risk of death from COVID-19. (*Id.*) He alleges that Defendant Wetzel is aware of the conditions and has not responded reasonably, thereby increasing Robinson's emotional distress. (*Id.*) He asserts an Eighth Amendment claim against Wetzel, together with claims for false imprisonment, abuse, battery, and intentional infliction of emotional distress. (*Id.* at 17.)

## II.     STANDARD OF REVIEW

Because Robinson appears to be unable to pay the filing fee in this matter, the Court will grant him leave to proceed *in forma pauperis*.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184

---

[3] Because Robinson is a prisoner, under the provisions of the Prison Litigation Reform Act, he must still pay the full filing fee in installments.

F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Robinson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A. Release from Custody

As an element of relief, Robinson requests that he be released from custody and absolved from his current confinement. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to

immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Robinson's request for release in this §1983 action must be denied.

### B. Declaratory Relief

Robinson requests a declaration that the conduct of the Defendants was in violation of the United States Constitution. (ECF No. 2 at 20.) However, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct," and is also not "meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."). Robinson's request for declaratory relief, accordingly, must be dismissed.

### C. Deliberate Indifference Claim Against Responding Nurse

Robinson alleges that Responding Nurse's treatment of his seizure constituted deliberate indifference to his serious medical needs. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has

---

[4] As it appears that Robinson was a convicted prisoner at the time of the events in question, the Eighth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Robinson alleges that after he lost consciousness, Responding Nurse provided treatment, including administration of Narcan, Benadryl, Ativan, and a tranquilizer.  (ECF No. 2 at 12.) This treatment appears to have been provided immediately, while Robinson was still in the hallway where he fell.  (*See id.* at 11-12.)  Robinson was then transferred to a medical holding room, though it is not alleged that this was done at the direction of Responding Nurse. Thereafter, he was transported to the hospital by ambulance for additional treatment.  (*Id.* at 13-14.)  Robinson has failed to allege facts showing that Responding Nurse refused, delayed, or prevented him from receiving medical treatment.  That he may disagree with the care provided does not provide a basis for a plausible claim.  Robinson's deliberate indifference claim against Responding Nurse will be dismissed with prejudice.[5]

---

[5] In connection with his injuries, Robinson requests an injunction "ordering defendants to provide a medical exam to see brain scan, CAT scan, MRI, etc., also expunge false reports."

D.       **Excessive Force Claims Against the COs**

Robinson alleges that the COs handcuffed him and held him on the ground when he first lost consciousness. (*Id.* at 11.) He further alleges that they laid on his legs, chest and arms while he was unconscious in the hallway. (*Id.*) They are further alleged to have kept him handcuffed and on the ground, with COs lying on him, after he was moved to a medical holding room. (*Id.* at 12-13.) Robinson alleges that when he regained consciousness, he experienced difficulty breathing and stated to the COs "Please help me" and "I can't breathe." (*Id.* at 13.) He also alleges that in response, the COs mocked him, while continuing to lie on top of him to restrain him. (*Id.*) He alleges that he suffered injuries to his wrists, back, chest and legs as a result of the COs' conduct, injuries for which he was treated at the hospital. (*Id.* at 14.) Based on these allegations, Robinson's Complaint will be served on the COs for a responsive pleading. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (holding that the Eighth Amendment prohibits prison

---

(ECF No. 2 at 21.) Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. "The standards for a temporary restraining order are the same as those for a preliminary injunction." Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994). Preliminary injunctive relief "is not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). Rather, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019). "The first two factors are prerequisites for a movant to prevail." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999). His deliberate indifference claim having been dismissed with prejudice, Robinson cannot establish that he is likely to succeed on the merits, and therefore, his request for an injunction will be dismissed.

officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency)

      E.      **Failure to Protect Claim Against Lieutenant**

Robinson alleges that Lieutenant was present while the Defendant COs restrained him, both in the hallway and the medical holding room, both while he was unconscious and when he was conscious.  He asserts a claim against Lieutenant for failure to protect.  Robinson's allegations that Lieutenant observed the conduct of the COs, heard Robinson tell them he could not breathe and ask for help, and did nothing to stop the conduct that caused Robinson injury adequately states a plausible failure to protect claim.  *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (holding that the objective component of an Eighth Amendment claim requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"); *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991) (deliberate indifference means that a defendant consciously disregarded a serious risk to the prisoner's health or safety).  This claim will be served for a responsive pleading.

      F.      **Retaliation Claim Against Lieutenants 1 and 2**

Robinson alleges that after he filed a grievance, Lieutenant 1 called him to a security room, where she attempted to convince him to "sign off" on the grievance.  The Court understands this to mean that she sought to convince Robinson to abandon the grievance. Robinson alleges that Lieutenant 1 showed him video of Robinson losing consciousness, but not the COs' subsequent conduct, that she asked him what type of drugs he took, and that she asked him to sign off on the grievance.  (*Id.* at 14.)  He does not allege that she threatened him or took further action against him.  (*See id.*)  Robinson alleges that, in a separate room, Lieutenant 2 verbally threatened to make Robinson's stay at Phoenix "troublesome" by reporting Robinson as

a drug abuser, by arranging for Robinson's cell to be searched, and arranging for Robinson to be placed in restricted housing unless Robinson signed off on the grievance. (*Id.* at 15.) Lieutenant 2 is also alleged to have indirectly threatened Robinson's chance to be paroled. (*Id.*) When Robinson arrived at SCI-Camp Hill, he learned that he had been listed as a drug user, which he attributes to Lieutenant 2 following through with his threats. Based on these allegations, Robinson asserts retaliation claims against both Lieutenant 1 and Lieutenant 2.

In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, No. 19-2580, 2020 WL 2125780, at *3 (3d Cir. May 5, 2020).

A prisoner's filing of a grievance is constitutionally protected conduct. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell*, 318 F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)).

Robinson's allegations that Lieutenant 2 threatened specific means by which he would make Robinson's stay at SCI-Phoenix "troublesome" and his alleged reporting of Robinson as a drug user, which Robinson alleges made his stay at SCI-Camp Hill difficult, adequately state a plausible claim for retaliation and this claim will be served for a responsive pleading. However, Robinson's allegations against Lieutenant 1 do not state a plausible retaliation claim. The only adverse action alleged is that Robinson was called to a room where he was asked to sign off on the grievance he had filed. He does not allege that he was threatened by Lieutenant 1. Accordingly, Robinson's allegations against Lieutenant 1 do not state a plausible retaliation

claim. However, because the Court cannot state with certainty that Robinson cannot state a plausible claim against Lieutenant 1, he will be permitted to amend this claim.

### G. Claim Against Wetzel

Robinson also alleges that SCI-Forest's response to COVID-19 required excessive amounts of cell time and masking, and that the measures were nonetheless inadequate because the facility was overcrowded and social distancing was not possible. Robinson alleges this caused him emotional distress and an increased risk of death from COVI-19. (ECF No. 2 at 16.) He asserts an Eighth Amendment claim against Wetzel, who he alleges was aware of the conditions, together with claims for false imprisonment, abuse, battery, and intentional infliction of emotional distress. (*Id.* at 17.)

In its decision in *Hope v. Warden York County Prison*, 972 F.3d 310, 325-31 (3d Cir. 2020), the United States Court of Appeals for the Third Circuit affirmed that "[t]o establish deliberate indifference [in the COVID-19 context, the prisoner plaintiffs] must show the Government knew of and disregarded an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as constitutional rules "are not subject to mechanical application in unfamiliar territory." *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the facility has taken concrete steps towards mitigating the medical effects of COVID-19 on a detention facility, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even

though they cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious preexisting medical conditions the prisoner may have.  *Id.* at 330-31.

Robinson does not allege that he contracted COVID-19, only that his risk of death from the virus was increased by the conditions at SCI-Forest.  He alleges in conclusory fashion only that Wetzel was aware of the conditions and failed to correct them, resulting in Robinson's mental and emotional injury.  (ECF No. 2 at 16, 17.)  He does not allege any specific conduct on the part of Wetzel that constituted deliberate indifference, and an increased risk of contracting COVID-19 alone is an insufficient basis upon which to establish a constitutional violation.  *See Hope*, 972 F.3d at 330 (explaining that the Constitution does not require the government to entirely eliminate the risk of contracting COVID-19 in a prison setting, stating "[plaintiffs] argue that the Government must eliminate *entirely* their risk of contracting COVID-19.  That task is not the constitutional standard, however."); *Adames v. Pistro*, Civ. A. No. 21-2855, 2021 WL 2903064, at *2 (E.D. Pa. July 9, 2021) (dismissing on screening a *Bivens* claim asserting deliberate indifference based solely on exposure to COVID-19 in prison).  Accordingly, Robinson's deliberate indifference claim against Wetzel is not plausible.  Because the Court cannot say that Robinson can never assert a plausible claim, he will be granted leave to amend this claim as well.

**IV.    CONCLUSION**

For the reasons stated, Robinson's application for leave to proceed *in forma pauperis* will be granted.  Robinson will be permitted to proceed on his excessive force claims against the COs, his failure to protect claim against Lieutenant, and his retaliation claim against Lieutenant 2.  Robinson's deliberate indifference claim against Responding Nurse will be dismissed with prejudice.  Robinson's retaliation claim against Lieutenant 1 and his deliberate indifference claim against Wetzel will be dismissed without prejudice, and Robinson will be granted leave to

amend these claims. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

An Order follows, which shall be docketed separately.[6]

---

[6] At this juncture, the Court is prepared to allow Robinson's claims to proceed against the unnamed COs and Lieutenants. The Court is keenly aware, however, that although Robinson is entitled to service by the United States Marshals Service, *see* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3), it is highly unlikely the Marshals Service could properly serve the Summonses and Complaint without more precise identifying information for these individuals such as last name, first name, rank, physical description, etc. Therefore, in order to ultimately facilitate a more effective attempt at service by the Marshals, the Court is inclined to adopt the approach taken by the Second Circuit Court of Appeals in *Davis v. Kelly*, 160 F.3d 917 (2d Cir. 1998).

In *Davis*, the Second Circuit recognized that under certain circumstances a court should not dismiss otherwise colorable § 1983 claims against supervisory personnel, who are not alleged to otherwise have personal involvement, until a *pro se* plaintiff has been afforded an opportunity, at least through limited discovery, to identify the subordinate officials who have personal liability. *Id.* at 920-21 (observing that "courts have pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability").

Third Circuit has not explicitly adopted the approach identified by the Second Circuit in *Davis*. However, in *Wyatt v. Municipality of Commonwealth of Philadelphia*, 718 F. App'x 102, 103-04 (3d Cir. 2017) (per curiam), the Third Circuit recognized the difficulties presented where a *pro se* plaintiff could only provide limited information for the Marshals Service for purposes of serving the defendants identified as employees of the City of Philadelphia. When the City claimed it could not accept service without the defendants' full names, and the *pro se* plaintiff could not provide that information, the district court dismissed the complaint for failure to timely effect service under Federal Rule of Civil Procedure 4(m). *Id.* at 104. Thereafter, Wyatt filed a separate suit against the City for failing to accept service in the original action. *Id.* After the second suit was dismissed, Wyatt appealed. The Third Circuit noted that where a *pro se* plaintiff initially sued prison officials in their official capacities, he "effectively sought relief against the City" of Philadelphia. *Id.*

Accordingly, the Third Circuit vacated and remanded Wyatt's subsequent action and directed the district court to consolidate the cases. By way of the consolidation, the Third Circuit noted that "[n]ow that the City will be a defendant, service on the City itself should be easily effected and the City should take appropriate steps to identify the individual defendants based on the information Wyatt has provided." *Id.* at 105. Based on the Third Circuit's approach in *Wyatt*, the Circuit seems to have implicitly sanctioned the use of the City of Philadelphia as a placeholder for the unknown defendants for the limited purpose of assisting the *pro se* plaintiff to obtain sufficient information to identify the defendants in order to effect proper service.

Based *Davis* and *Wyatt*, it appears that the prudent course of action for the Court to follow at this time is to maintain Defendant John Wetzel as a Defendant in this matter for the limited, and sole purpose, of allowing the Marshals Service to serve a copy of the Summonses and the Complaint, along with a copy of this Memorandum and its accompanying Order, so that the Department may assist Robinson in identifying the unnamed Defendants. At such time that Robinson is able to identify these Defendants, the Court will dismiss Defendant Wetzel as a

**BY THE COURT:**

**/s/ *John Milton Younge***
**JOHN M. YOUNGE, J.**

---

placeholder for these Defendants.  Should Robinson still be unable to identify these Defendants after reasonable efforts and assistance from the Department of Corrections, the Court will entertain whatever motions for relief Wetzel seeks to bring.